```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 ROBERT TEDESCHI,

                     Plaintiff,            MEMORANDUM & ORDER
                                             22-CV-00377(EK)

          -against-

 COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

    Plaintiff Robert D. Tedeschi challenges the Social Security Administration's denial of his claim for disability insurance benefits.  Before the Court are the parties' cross-motions for judgment on the pleadings.  For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.[1]

### I. Background

**A. Procedural Background**

    In September 2018, Tedeschi applied for disability benefits, alleging a disability onset date of December 29, 2017.  Administrative Tr. ("Tr.") 237-43, ECF No. 8.  The agency denied his claim.  *Id.* at 68-82.  On April 8, 2020 and August 5, 2020,

---

[1] Per Federal Rule of Civil Procedure 25(d), Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as the defendant. The Clerk of Court is respectfully directed to update the caption accordingly.

an administrative law judge ("ALJ"), ALJ Donaghy, held hearings on Tedeschi's claim.  *Id.* at 32-67.  The case was then reassigned to ALJ Allen.  *See id.* at 13-31.  ALJ Allen concluded that Tedeschi was not disabled and therefore not entitled to disability benefits.  *Id.*  The Appeals Council denied Tedeschi's request for review of the ALJ's decision, rendering it final.  *Id.* at 1-6.  Tedeschi timely sought review of that decision in this Court.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If

2

the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Tedeschi had not engaged in substantial gainful activity since his alleged onset date.  Tr. 18.  The ALJ also determined that Tedeschi suffered from the "severe impairments" of cervical degenerative disc disease, left knee internal derangement, obesity, and left small finger disorder.  *Id.* at 19.  However, the ALJ also determined that none of these impairments rose to the level of a Listed Impairment.  *Id.*

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ concluded here that Plaintiff had the RFC to perform "light work" with limitations.  Tr. 20.  Those limitations included that the work must require Tedeschi to do no more than: lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday, sit for

3

6 hours in an 8-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Tedeschi could not perform his past work as a Police Officer. Tr. 24. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The ALJ determined that Tedeschi could perform such jobs, including as a "Police Officer, Booking," and a Security Guard. Tr. 25. Given that conclusion, the ALJ concluded that Tedeschi was not disabled. *Id.*

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[2]

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

4

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III.  Discussion

Plaintiff raises three arguments on appeal.  First, Tedeschi argues that ALJ Allen improperly evaluated the medical evidence by discounting the opinions of Tedeschi's treating physicians and examiners in favor of a non-treating consultant's opinion and her own evaluation of the medical reports.  Pl.'s Mem. Of L. in Supp. Of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 7-19.  Tedeschi also asserts that ALJ Allen failed to fully develop the record, and that substantial evidence did not support the RFC determination.  *Id.* at 19-22.  Second, Tedeschi argues that ALJ Allen failed to properly consider his testimony concerning his symptoms and their impact on his life.  *Id.* at 22-24.  Third, Tedeschi argues that ALJ Allen did not properly evaluate the vocational evidence.  *Id.* at 24-25.  None of these arguments has merit.

**A.  Treating Physicians' Opinions and Other Medical Evidence**

Tedeschi first challenges ALJ Allen's assessment of the medical evidence in the record.

5

1. <u>Evaluation of the Medical Opinion Evidence</u>

The Social Security Administration repealed its "treating physician rule" prior to Tedeschi's application for benefits.[3] Under the revised regulations applicable here, the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 20-CV-0261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). The SSA commits itself to "articulat[ing] in [its] determination or decision how persuasive we find all of the medical opinions" in the case record. 20 C.F.R. § 404.1520c(b).

The new regulations require an ALJ to evaluate medical opinions and findings based on factors including, among others: (1) their supportability (*i.e.*, the extent to which a source explains his or her opinion, and supports it with objective medical evidence); (2) consistency (*i.e.*, the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3) the source's relationship with the claimant (including the length of the relationship and frequency of

---

[3] As noted above, Plaintiff filed his application with the SSA in September 2018. The treating physician rule was repealed effective March 27, 2017, and replaced by new regulations set forth in 20 C.F.R §§ 404.1520c and 416.920c. *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021).

6

visits), and (4) the source's specialization (*i.e.*, education and training). 20 C.F.R. §§ 404.1520c(c).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain his consideration of them. *Id.* The regulation does not require the ALJ to explain his consideration of the remaining factors in every case. *Id*. These are not especially formalistic requirements.[4] In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

ALJ Allen considered the medical opinion evidence of multiple doctors regarding Tedeschi's impairments: Tedeschi's treating physicians Dr. Barbash and Dr. Goldstein, the consultative examiner, Dr. Asad, and the state agency medical consultant, Dr. Chen. Tr. 23-24. First, Dr. Barbash opined that Tedeschi was "total, temporary disabled [sic]" and had limitations including never lifting or carrying any weight,

---

[4] Even when the treating physician rule applied, the ALJ was still free to discount a treating physician's opinion as long as she provided "good reasons" for doing so. *E.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

never engaging in postural activities or fine or gross movements with the left hand, sitting and standing or walking for only two hours each in a workday, not maintaining the neck in a constant position, avoiding certain environments, and requiring unscheduled breaks.  *Id.* at 508-10.  Applying the factors mandated by Section 404.1520, ALJ Allen found this opinion "not persuasive" because it is "not well supported by the treatment history, medication use, and clinical and objective findings." *Id.* at 23.

Similarly, ALJ Allen found Dr. Goldstein's repeated opinions that Tedeschi remained "totally disabled," *id.* at 487, 490, "not persuasive because they are remote opinions that are inconsistent with the treatment history, the other evidence, and the claimant's work history during this period," *id.* at 23-24. (Moreover, the ultimate determination of disability is, in this context, a legal conclusion reserved to the Commission.  *See* 20 C.F.R. § 404.1520.)  Tedeschi nevertheless argues that ALJ Allen did not cite sufficient evidence to reject Dr. Goldstein's opinions.  Pl.'s Mem. 10-19.  However, ALJ Allen contrasted these opinions with "treating notes [th]at do not show much in terms of limitations except for some pain and somewhat limited range of motion" and "[o]ther records [that] fail to mention any significant gait abnormalities or neurological deficits," Tr. 23, suggesting less significant spinal and knee-related

8

limitations.  She further cited to orthopedic records from January 9, 2019 to July 30, 2019, that reflect reports of pain, some decreased range of motion, and small finger deformity, but also report no acute distress, 5/5 strength, and that Tedeschi was neurovascularly intact.  *Id.* at 22, 511-27.

Further, the records that ALJ Allen cited show a series of test results, including negative patellar grind, crepitus, Lachman, vargus-valgus laxity, posterior drawer, and McMurray's, each of which evaluates the health of the knee and surrounding joints and ligaments, and taken together indicate a lack of pain, joint popping, instability, osteoarthritis, or tearing in and around the knee.  *Id.*  ALJ Allen additionally contrasted the treating doctors' opinions regarding disability with Tedeschi's own report that he was doing "moderate" amounts of walking and biking, *id.* at 22, and with Tedeschi's relatively "sparse" treatment history since retiring, and his need for meloxicam only 3-4 times a week, along with over-the-counter Advil, *id.*

ALJ Allen also assessed Consultative Examiner Asad's opinion that Tedeschi has marked limitations in activities requiring cervical maneuvers and moderate limitations for squatting, walking and standing for a long period of time and for lifting, carrying or pushing heavy objects with the left hand.  *Id.* at 505.  ALJ Allen found this opinion similarly "not

9

persuasive given the other evidence in the record supports less severe restrictions." *Id.* at 23. In particular, she pointed to Dr. Asad's own examination, which — despite finding a decreased range of motion — also reported no cervical pain, spasm, or trigger points, no acute distress, a "normal gait," and no need for help changing, getting on and off the exam table, or rising from a chair. *Id.* at 22, 503-05. This exam additionally noted "[f]ull range of motion" in the hips, right knee, and ankles, full strength with "[n]o muscle atrophy" and "[n]o sensory abnormality" in the lower extremities, and equal and physiologic reflexes. *Id.* Finally, despite a flexed fifth finger, Dr. Asad noted hand and finger dexterity and 5/5 bilateral grip strength. *Id.* Thus, ALJ Allen pointed to medical evidence in Dr. Asad's report related to Tedeschi's spine, knee, and fifth finger, respectively, that mitigated against a finding of disability in each.

Finally, ALJ Allen contrasted these treating physicians' opinions with that of a state agency medical consultant, Dr. Chen, who stated that Tedeschi "could perform light work with postural limitations." *Id.* at 24, 78-79. ALJ Allen found this opinion, based on a review of Tedeschi's available medical records on December 17, 2018, *id.* at 73-74, 78-79, to be "somewhat persuasive, and not inconsistent with the overall evidence," *id.* at 24. Although, as Tedeschi points out,

10

Dr. Chen did not have Tedeschi's complete medical record at the time of this opinion, Dr. Chen did review a substantial record, which showed his hand and finger dexterity to be intact, with 5/5 grip strength and strength in proximal and distal muscles, and no muscle atrophy bilaterally in the upper and lower extremities.  *Id.* at 79.

Ultimately, ALJ Allen's consideration of Tedeschi's treatment records, fairly moderate treatment history, and self-reports of activity — which she found consistent with the ability to perform light work with certain limitations - amounted to substantial evidence in support of her conclusion.

2. Development of the Record

Next, Tedeschi argues that the ALJ failed to fulfill her duty to develop the record, by "failing to fully identify Dr. Chen in the Administrative record."  Pl. Mem. 20.  In particular, Tedeschi asserts that neither the record nor the ALJ decision reveal Dr. Chen's first name or specialty, making it impossible to assess his/her credentials and therefore his/her opinion.  *Id.*

An "ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran*, 569 F.3d at 112.  Notwithstanding this general "duty to investigate and develop the facts," *see id.* at

11

113, the ALJ "is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n.5 (2d Cir. 1999)).  In other words, the ALJ has no duty "to develop the record any further when the evidence already presented is 'adequate for the ALJ to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *see also* 20 C.F.R. § 416.920b ("If all of the evidence we receive . . . is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence.").

As the Commissioner points out, D. Chen, M.D. is identified by Social Security Code 19, which is the code for an internal medicine specialty.  Tr. 79.  Thus, it is not clear precisely what "gap" exists in the record, beyond the doctor's full first name.  Further, Tedeschi does not explain how identifying Dr. Chen with greater specificity would have affected his case, *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013), beyond the fact that a search of the New York State Physician Profile website revealed that one of the two D. Chens listed as an internal medicine specialist in New York State "surrendered" his license to practice in the state.  Pl.

12

Reply Mem. 9. In addition, although the code 19 provides Dr. Chen's specialization, 20 C.F.R. §404.1520c(b)(2) does not require an ALJ to explain how she considered the specializations of the doctors who provided medical opinions. Thus, no greater specificity was required by the rules.

Ultimately, Tedaschi fails to identify or explain any obvious gaps in the administrative record, and the evidence presented to the ALJ, including Dr. Chen's specialization code, was "adequate for [the ALJ] to make a determination as to disability." *Janes*, 710 F. App'x at 34. Accordingly, ALJ Allen did not fall short of her duty to develop the record.

3. RFC Determination

Tedeschi also challenges ALJ Allen's RFC determination. As noted above, the ALJ found that Tedeschi could perform light work with the following limitations: "lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, occasionally climb, balance, stoop, kneel, crouch, and crawl." Tr. 20. Tedeschi argues, however, that her failure to base this determination on any of the medical opinions in the record, or to request a functional assessment, deprived the RFC assessment of substantial supporting evidence. Pl. Mem. 21-22.

"To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts,

13

physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 507-CV-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009), *aff'd* 370 F. App'x 231 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1545(b)-(e)). As explored in greater detail above, although ALJ Allen did not find any of the medical opinions completely persuasive, she did fully consider each of them, and she weighed them against the underlying treatment records and treatment history, as well as Tedeschi's own statements about his symptoms, medication use, and capabilities. *Supra* Section III.A.1. She cited medical evidence that showed, for example, full strength and no muscle atrophy in Tedeschi's lower extremities, full range of motion with no pain in his upper extremities and lumbar spine, and intact hand and finger dexterity. Tr. 22. The question, moreover, is not whether there was substantial evidence in the record that may have supported the claimant's position, but rather whether substantial evidence supports the ALJ's finding. *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order).

Further, the ALJ, not a given treating medical source, is ultimately "responsible for assessing [a claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c). Thus, while medical opinions can — and indeed must — be considered, the ALJ's decision need "not perfectly correspond with any of the

14

opinions of medical sources cited in [the] decision." *Matta*, 508 F. App'x at 56. Here, ALJ Allen considered all the evidence she was required to consider under the regulations and supported her RFC determination with substantial evidence.

**B.   Subjective Complaints**

Next, Tedeschi argues that the ALJ erred by failing to give adequate weight to his subjective complaints of pain and limitation in his ability to perform daily activities. Pl. Mem. 22-24. Section 1529 instructs ALJs to "consider all [of a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective evidence and other evidence." 20 C.F.R. § 404.1529(a); *see also Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) ("The ALJ must consider statements the claimant or others make about her impairments, her restrictions, [and] her daily activities . . . ."). Tedeschi acknowledges that ALJ Allen went through the two-step process mandated by 20 C.F.R. §404.1529, determining that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but also that Tedeschi's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Tedeschi

15

asserts, however, that this evaluation of his statements is "flawed" and overly "vague." Pl. Mem. 23.

However, contrary to Tedeschi's assertions, ALJ Allen considered his statements in the context of the complete record. After laying out her opinion, she walked through reports of Tedeschi's X-rays and MRIs, treatment notes from his medical providers, orthopedic records, and contradictory statements from Tedeschi himself. Tr. 21-24. For example, ALJ Allen acknowledged that "it is clear that the claimant had injuries to the neck, left knee, and left fifth digit" that limited his work capacity, but also noted that Tedeschi had reported doing moderate amounts of walking and biking as of 2020. *Id.* at 22. She noted that the medication he relies on to manage pain included only the anti-inflammatory meloxicam 3-4 times a week and over the counter Advil. *Id.* Further, as explored above, she noted reports from Tedeschi's various medical examinations and treatments, which showed, among other things, improvement from medial branch block injections, no acute distress during examinations and 5/5 bilateral grip strength, normal gait and stance, and no need for assistive devices. *Id.* Finally, although ALJ Allen incorrectly stated the length of time that Tedeschi had worked following his finger injury, *id.*, she acknowledged throughout the opinion that he was not engaged in substantial gainful activity, *id.* at 18.

Overall, this discussion reflects the ALJ's consideration of Tedeschi's subjective statements and their consistency with the record overall, as required by the regulations.

**C.  Vocational Evidence**

Finally, Tedeschi argues that ALJ Allen did not properly evaluate the vocation evidence, because she found that Tedeschi was able to work as a "Police Officer, Booking," although he was no longer able to continue his previous work as a Police Officer.  Pl. Mem. 24-25.  He argues that, under the U.S. Department of Labor's O*NET database of occupational listings, these two occupations link to the same job code, meaning they "are essentially the same occupation."  *Id.* However, as the Commissioner points out, the SSA's Dictionary of Occupational Titles accords different classifications to the two occupations, with the booking position classified as light, semiskilled work and the police officer position classified as medium and skilled.  Dictionary Of Occupational Titles (4 Ed. Rev. 1991).  Further, Tedeschi does not address the fact that the regulations only require the identification of one occupation with significant numbers in the national economy.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b).  Here, ALJ Allen also cited the vocational expert's identification of Security Guard as a job that Tedeschi could perform, to which he does not

17

object.  Tr. 25.  Thus, the ALJ properly assessed the vocational evidence to find jobs in significant numbers in the national economy that Tedeschi could perform.

### IV.  Conclusion

For the reasons set forth above, the court grants the Commissioner's motion for judgment on the pleadings and denies Tedeschi's motion.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                              /s/ Eric Komitee
                                        ERIC KOMITEE
                                        United States District Judge

Dated:   March 7, 2024
        Brooklyn, New York